IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Civil Action No.: 4:26-cv-00014

| | |
|---|---|
| BRENDA GEIGER, EVA PEPAJ, JANET GUZMAN, LUCY PINDER, and ROSA ACOSTA, <br><br> Plaintiff, <br><br> v. <br><br> THEE BODY SHOP CABARET CORPORATION d/b/a THEE BODY SHOP CABARET, <br><br> Defendant. | **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs BRENDA GEIGER, EVA PEPAJ, JANET GUZMAN, LUCY PINDER, and ROSA ACOSTA, (collectively, "Plaintiffs"), file this Complaint against THEE BODY SHOP CABARET CORPORATION, d/b/a THEE BODY SHOP CABARET ("Defendant") respectfully allege as follows:

## BACKGROUND

1.     This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their strip club, THEE BODY SHOP CABARET located at 4630 Whichard Rd, Greenville, North Carolina 27834 (hereinafter referred to as the "Strip Club" or "Thee").

2.     As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Common Law Right of Privacy - Misappropriation; d) Violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C.

1

Gen. Stat. § 75-1.1 et seq.; e) Defamation; f) Negligence, Gross Negligence, and Respondeat Superior; g) Conversion; h) Unjust Enrichment; and i) Quantum Meruit.

3.      In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.      Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.      According to publicly available records, Defendant THEE BODY SHOP CABARET CORPORATION, is a corporation formed under the laws of the state of North Carolina, with its principal place of business located at 4630 Whichard Rd, Greenville, North Carolina, 27834. Upon information and belief, THEE BODY SHOP CABARET CORPORATION operates THEE BODY SHOP CABARET, which is located at 4630 Whichard Rd, Greenville, North Carolina 27834.

8.      Venue is proper in the United States District Court for the Eastern District of North Carolina because Defendant's principal place of business is located in Greenville, North Carolina, Pitt County.

9.      A significant portion of the alleged causes of action arose and accrued in Greenville, North Carolina and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Greenville, North Carolina.

## PARTIES

### Plaintiffs

10.     Plaintiff BRENDA GEIGER ("GEIGER") is a well-known professional model, and

2

a resident of Onondaga County, New York.

11.     Plaintiff EVA PEPAJ ("PEPAJ) is a well-known professional model, and a resident of Los Angeles County, California.

12.     Plaintiff JANET GUZMAN ("GUZMAN") is a well-known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff LUCY PINDER ("PINDER") is a well-known professional model, and a resident of England.

14.     Plaintiff ROSA ACOSTA ("ACOSTA") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendant*

15.     Defendant, THEE BODY SHOP CABARET CORPORATION d/b/a THEE BODY SHOP CABARET, is a corporation formed under the laws of the state of North Carolina and registered to conduct business in North Carolina. During times relevant to this action, THEE BODY SHOP CABARET CORPORATION operated THEE BODY SHOP CABARET.

16.     Service of process may be perfected upon Defendant THEE BODY SHOP CABARET CORPORATION d/b/a THEE BODY SHOP CABARET by serving the registered agent for service of process, Jonathan Keith Deatheridge, who can be located at 1105 Oriental Avenue, Kinston, NC 27834.

## FACTUAL ALLEGATIONS

17.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

18.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

3

19.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

20.     In the case of each Plaintiff, this apparent claim was false.

21.     Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

22.     No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

23.     Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

24.     GEIGER is a professional model and actress who performed with eight-time Grammy nominee rapper Lil Wayne in a music video for two-time Grammy nominee singer Keri Hilson. She is most known for her work in Glamour Magazine and her appearance on "The Howard Stern Show" in a "Miss HTV March" contest. Geiger has appeared in numerous magazines such as Show, Maxim and Raw, and has modeled for several product campaigns such as Primitive Clothing, where she currently has her own line of custom skateboard decks.

25.     That we know of, GEIGER is depicted in the photos in Exhibit "A" to promote Thee on its Instagram account. These Images were intentionally altered to make it appear that Geiger was either an employee working at Thee, that she endorsed Thee, or that she was otherwise associated or affiliated with Thee.

26.     GEIGER has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and

4

will continue to suffer, damages as a result of same.

27.     PEPAJ is a professional model and actress who moved to Hollywood to pursue her career in 2004. Her work includes high fashion runway modeling, print features, and film roles. Pepaj has appeared in films such as The Hand Off, Interior, True Detective, Leather Bar and The Romp, and was a feature model in a national Diet Coke TV commercial campaign. She is also a content creator and has over 2.4 million Instagram followers. Her YouTube channel, shared with her husband, has over 2.93 million subscribers, as well as 1.89 million followers on TikTok.

28.     That we know of, PEPAJ is depicted in the photo in Exhibit "B" to promote Thee on its Instagram account. This Image was intentionally altered to make it appear that PEPAJ was either an employee working at Thee, that she endorsed Thee, or that she was otherwise associated or affiliated with Thee.

29.     PEPAJ has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

30.     GUZMAN is a social media star who is widely known for her self-titled Instagram page. She has gained popularity there for her modeling and lifestyle photos, surpassing over 2 million followers. She's widely known to be Fashion Nova's number 1 featured talent. She mostly promotes the clothes of the Fashion Nova clothing brand on her Instagram and has also appeared on the Fashion Nova Billboard located at Melrose and Fairfax (California). She was featured in an exclusive video interview with Fashion Nova in March of 2022. She has also seen her janetguzman_TikTok channel become widely popular, with her videos on the platform earning over 1.9 million total likes. She also runs a popular OnlyFans subscription account and a travel/lifestyle/fashion vlog on YouTube.

31.     That we know of, GUZMAN is depicted in the photo in Exhibit "C" to promote Thee on its Instagram account. This Image was intentionally altered to make it appear that GUZMAN was either an employee working at Thee, that she endorsed Thee, or that she was

5

otherwise associated or affiliated with Thee.

32.     GUZMAN has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same

33.     PINDER is, and at all times relevant to this action was, an English model, actress, host, businesswoman, and one of Great Britain's most famous glamour models. Pinder has featured in publications such as FHM, Nuts, Loaded, The Daily Star, and hundreds of others. Pinder has appeared on FHM's list of the "100 Sexiest Women in the World" in 2005, 2006, and 2007. She was a guest columnist in Nuts, entitled "The Truth About Women" and appeared on the final edition of the Nuts magazine cover. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery) among others, and on large national and international advertising campaigns. Pinder has an established an acting career with many TV appearances and Film credits. She has appeared on shows such as I'm Famous and Frightened, Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon, and Team and Bo! in the USA. Pinder was also a contestant on Celebrity Big Brother. Pinder starred in films such as The Seventeenth Kind, Age of Kill, and Warrior Savitri. Pinder works closely with a number of Wildlife charities and is involved in fundraising for Tiger Time, The David Shepherd Wildlife Foundation and International Animal Rescue. Pinder has also worked with Help for Heroes appearing in the Hots Shots fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Pinder's own annual calendar continues to be one of the bestselling model calendars years after year and enhances Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram, and X (formerly known as Twitter). [1]

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

6

34.    That we know of, PINDER is depicted in the photo in Exhibit "D" to promote Thee on its Facebook page. This Image was intentionally altered to make it appear that Pinder was either an employee working at Thee, that she endorsed Thee, or that she was otherwise associated or affiliated with Thee.

35.    PINDER has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

36.    ACOSTA started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a bachelor's in art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she was nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 52,000 Facebook followers, over 1.6 million Instagram followers, and over 280,600 X (formerly known as Twitter) followers.

37.    That we know of, ACOSTA is depicted in the photos in Exhibit "E" to promote Thee on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Acosta was either an employee working at Thee, that she endorsed Thee, or that she was otherwise associated or affiliated with Thee.

38.    ACOSTA has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has

7

received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activity and Misappropriation***

39.     Defendant operates (or operated, during the relevant time period,) a Strip Club, where they are (or were) engaged in the business of selling alcohol and food in an atmosphere where nude or semi-nude women entertain the business' clientele.

40.     Defendant owns, operates, and controls Thee's social media accounts, including its Facebook, Twitter, and Instagram accounts.

41.     Defendant used Thee's Facebook, Twitter, and Instagram accounts to promote Thee's, and to attract patrons.

42.     Defendant did this for its own commercial and financial benefit.

43.     Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Thee, endorsed Thee, or was otherwise associated or affiliated with Thee.

44.     Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Thee to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

45.     Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by Thee, and at no point have any of the Plaintiffs ever endorsed Thee or otherwise been affiliated or associated with Thee.

46.     All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs

47.     Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

48.     Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

49.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

50.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

51.     Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

52.     Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Thee.

53.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

54.     In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Thee.

55.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

56.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

9

57.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Thee's website, Twitter, Facebook, or Instagram accounts.

58.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

## FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

59.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

60.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein.

61.     Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment , or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

62.     Thus, this was done in furtherance of Defendant's commercial benefit.

63.     Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

64.     Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

65.     As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

66.     Defendant's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

67.     Despite the fact that Defendant was at all times aware that Plaintiffs neither worked at, nor endorsed its establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendant 'sestablishment.

68.     Defendant knew that their use of P Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

69.     Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

70.     As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

71.     Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

72.     Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

73.     WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

74.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

75.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendant and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

76.     Defendant used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use their image in order to advertise, promote, and market

Defendant's businesses, Defendant's establishment, and/or Defendant's establishment events and activities.

77. Defendant's use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendant's businesses, Defendant's establishment, and/or Defendant's events and activities as described in this Complaint was false and misleading.

78. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

79. Defendant's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant's establishment, as to the general quality of attendees and participants of Defendant's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant establishment events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities.

80. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, or Defendant establishment events and activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant's

establishment, visit Defendant's establishment, and participate in events at Defendant's establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendant's establishment, visit Defendant's establishment and take part in the events at Defendant's establishment.

81. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's establishment and their activities and attracting clientele to Defendant's establishment.

82. Defendant knew or should have known that their unauthorized use of Plaintiff's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

83. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

84. Defendant's wrongful conduct as described herein was willful.

85. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

86. Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

87. The method and manner in which Defendant used the image of Plaintiffs further evinces that Defendant was aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their image to advertise Defendant's businesses.

88. Defendant has caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendant's establishment.

89. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Common Law Right of Privacy - Misappropriation)

90. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

91. Defendant has appropriated Plaintiffs' likeness for Defendant's commercial purposes without authority or consent from Plaintiffs.

92. Defendant misappropriated Plaintiffs' likenesses by publishing their Images on Defendant's website or related social media accounts as part of Defendant's advertising campaign.

93. Defendant's website and social media accounts were designed to advertise and attract business to Defendant and generate revenue for Defendant.

94. Plaintiffs are informed and believe and hereon allege that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

95. Plaintiffs areis further informed and believe and hereon alleges that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

96. Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

97. Upon information and belief, Defendant use of Plaintiffs' image and likeness did in fact attract clientele and generate business for Defendant.

98. At no point did Defendant ever seek or receive permission or consent to use any Plaintiffs' Image for any purpose.

15

99.     Defendant was at all relevant times aware that it had never received any Plaintiffs' permission or consent to use their Images in any medium for any purpose.

100.    At no point did Defendant ever compensate Plaintiffs for its unauthorized use of their Images.

101.    Defendant's misappropriation of Plaintiffs' image and likeness in some cases was in violation of copyrights and licenses lawfully held by others, and Plaintiffs' lack of respect for those rights was likewise a proximate cause of the harm done to Plaintiffs from Defendant's misappropriation of their Images.

102.    Plaintiffs have been damaged in amounts to be proved at trial.

## FOURTH CAUSE OF ACTION
### (Violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq.)

103.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

104.    Defendant operated Defendant's website and social media accounts in order to promote Defendant, to attract clientele thereto, and to thereby generate revenue for Defendant.

105.    As such, Defendant's operation of the website and social media accounts, and its publication of Images thereon, were in commerce, in that they involved a business activity and the day-to-day activities and affairs of Defendant in North Carolina.

106.    Defendant published Plaintiffs' image and likeness on Defendant's website and social media accounts to create the false impression that Plaintiffs were either club employees working at Defendant, endorsed Defendant, or were otherwise affiliated, associated, or connected with Defendant.

107.    As such, Defendant's intent in publishing Plaintiffs' image and likeness was to mislead the public as to Plaintiffs' employment at and/or affiliation with Defendant.

108. Defendant's false advertising, misrepresentations, and breaches of its duties to Plaintiffs and the public were unfair, in that they were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers in North Carolina.

109. Defendant's false advertising, misrepresentations, and breaches of its duties to Plaintiffs and the public were deceptive, in that they possessed the tendency or capacity to mislead, or created the likelihood of deception, affecting members of the public in North Carolina and thereby causing injury to Plaintiffs.

110. Upon information and belief, members of the public relied upon and were in fact deceived by Defendant's false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public.

111. Defendant thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of North Carolina, and caused injury to the Plaintiffs as complained of herein.

112. Defendant's advertising practices offend the public policy of North Carolina insofar as they constitute misappropriation of Plaintiffs' property rights in their own Images, breaches of copyrights and/or licenses held by others, and invasion of Plaintiffs' privacy, for Defendant's commercial benefit.

113. Defendant's advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or employees.

114. Defendant's advertising practices cause substantial injury to consumers and the Plaintiffs by creating the false impression that Plaintiffs are thee body shop cabaret corporation employees at, endorse, or are otherwise affiliated with Defendant.

115. There are no benefits to Defendant's advertising practices as set forth hereon except a benefit to Defendant's own commercial interests.

116. As a result of Defendant's unauthorized and misleading publication of Plaintiffs' image and likeness on its website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market themselves as models was injured.

117. As a result of Defendant's unauthorized and misleading use of Plaintiffs' image and likeness, Plaintiffs have suffered damages in an amount to be determined at trial.

118. Plaintiffs are entitled to treble damages pursuant to N.C.G.S. Section 75-1.

119. Plaintiffs are further entitled to an award of attorney's fees against and taxed to Defendants pursuant to N.C.G.S. Section 75-16.1

## FIFTH CAUSE OF ACTION
### (Defamation)

120. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

121. As detailed throughout this Complaint, Defendant has published altered Images of Plaintiffs in order to promote Defendant to the general public and potential clientele.

122. Defendant's publication of said Images constitutes a representation that Plaintiffs were either employed by Defendant, that they endorsed Defendant, or that they had some affiliation with Defendant.

123. None of these representations were true and violated Plaintiffs' rights to their images as well as copyrights and licenses lawfully held by others.

124. In publishing Plaintiffs' altered Images, it was Defendant's intention to create a false impression to the general public that Plaintiffs were strippers working at Defendant or endorsed Defendant.

125. Defendant was at least negligent in publishing Plaintiffs' image and likeness because it knew, or should have known, that Plaintiffs were not employed by Defendant, had no affiliation with Defendant, had not consented to the use of their Images, and had not been compensated for the use of their Images.

126. In the alternative, Defendant published the Images of Plaintiffs with actual malice, and its acts were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs, because it knew that Plaintiffs were not employed by Defendant, had no affiliation with Defendant, had not consented to the use of their Images, and had not been compensated for the use of their Images.

127. Despite Defendant's knowledge and reckless disregard of the true facts, it nevertheless made the decision to publish Plaintiffs' image and likeness to attract clientele and generate revenue for itself.

128. Defendant's publication of Plaintiffs' image and likeness constitutes defamation per se under North Carolina law because said publication falsely accuses Plaintiffs of having acted in a manner – i.e., working for or endorsing Defendant's business which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

129. Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation per se under North Carolina law because said publication would tend to impeach and injure each Plaintiffs in their trade, business, and profession as a professional model.

130. This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as thee body shop cabaret corporation, an inference which Defendant's publication of the Images support.

131. Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation per se under North Carolina law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

132. Defendants' publication of Plaintiffs' Images caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

19

## SIXTH CAUSE OF ACTION
### (Negligence, Gross Negligence, and *Respondeat Superior*)

133.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

134.    Plaintiffs are further informed and believe and hereon allege that Defendant maintains or should have maintained employee policies and procedures which govern the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, copyrights, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

135.    Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

136.    Defendant owed a duty of care to Plaintiffs to ensure that its advertising and promotional materials and practices did not infringe on their property and publicity rights.

137.    Defendant further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

138.    Defendant breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

139.    Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and North Carolina law, were not violated. Defendant breached their

20

duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

140.　Defendant's breaches were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs.

141.　Defendant's breaches were the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

142.　As a result of Defendant's negligence and gross negligence, Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages from the Defendant in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Conversion)

143.　Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

144.　Each Plaintiff is, and at all relevant times was, the exclusive owner of all right, title and interest in their Images, and have property interests thereon.

145.　By the conduct detailed above, Defendant converted Plaintiffs' property rights in their Images for its own use and financial gain.

146.　As a result of Defendant's unlawful conversion of Plaintiffs' image and likeness, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

147.　Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

148.　As set forth in detail above, Defendant published Plaintiffs' image and likeness in order to promote Defendant to the general public and potential clientele.

149.    Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were either club employees working at Defendant or endorsed Defendant.

150.    Defendant's purpose in publishing Plaintiffs' image and likeness was to benefit commercially due to its purported association with, employment of, and/or endorsement by Plaintiffs.

151.    Upon information and belief, Defendant did in fact benefit commercially due to its unauthorized use of Plaintiffs' image and likeness.

152.    Defendant has been enriched by its unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to Defendant.

153.    Plaintiffs have not been compensated for Defendant's commercial exploitation of their Images, and thus any financial benefit which Defendant received due to said exploitation is unjust.

154.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Quantum Meruit)

155.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

156.    Plaintiffs are each internationally known models who earns their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

157.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

158.    Although Defendant has availed itself of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at Defendant,

endorse Defendant, or are otherwise affiliated with Defendant, Defendant has not compensated Plaintiffs.

159.    Plaintiffs are therefore entitled to reasonable compensation for Defendant's unauthorized use of their Images.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Thee's Strip Club;

(c) For punitive in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.


This the 30th day of January, 2026.

/s/ Joseph N. Casas                          /s/ Matthew R. Gambale
JOSEPH N. CASAS, ESQ.              MATTHEW R. GAMBALE
CA Bar No. 225800                         N.C. Bar No. 43359
THE CASAS LAW FIRM, P.C.        COUNSEL CAROLINA
402 West Broadway St., Suite 400    1100 Wake Forest Road, Suite 205
San Diego, CA 92101                       Raleigh, North Carolina 27604
joseph@casaslawfirm.com              matt@counselcarolina.com
T: 855.267.4457                              T: 919.373.6422
F: 855.220.9626                              F: 919.578.3733
*Attorneys for Plaintiff*                     *Local Civil Rule 83.1(d) Attorneys for Plaintiff*